**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE: | CASE NO. 21-03292 (EAG) |
| EDUCATIONAL TECHNICAL COLLEGE, INC., | Chapter 11 |
| Debtor. | |
| _____ | |
| | |
| EDUCATIONAL TECHNICAL COLLEGE, INC., | ADV. PROC. NO. 21-00085 (EAG) |
| Plaintiff, | |
| v. | |
| ATUE REAL ESTATE S.E. et al., | FILED & ENTERED ON 12/22/2021 |
| | |
| Defendants. | |

**OPINION AND ORDER**

Pending before the court is an Urgent Motion for Preliminary Injunction filed by plaintiff Educational Technical College Inc. ("Edutec," "plaintiff," or "debtor") and the opposition to it by defendants Atue Real Estate S.E. ("Atue"), A. Cordero Badillo, Inc., and Atilano Cordero Badillo (collectively, the "defendants"). (Adv. Dkt. Nos. 93 & 99.). For the reasons stated below, the court enters judgment in plaintiff's favor on Counts 1, 4, 6, 7, and 8 of the amended complaint.

**I.      Jurisdiction.**

This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a), Local Civil Rule 83K(a), and the General Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of Puerto Rico dated

July 19, 1984 (Torruella, C.J.)[1] This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### II. Procedural History.

On August 9, 2021, Edutec filed a petition for voluntary relief under chapter 11 of the Bankruptcy Code. (Bankr. Dkt. No. 1.) On August 18, 2021, Edutec filed an adversary complaint against Atue alleging that the creditor had garnished certain funds several days before the bankruptcy filing pursuant to a writ of execution of judgment entered in local court. (Adv. Dkt. No. 1); see D CD 2018-0192. The complaint sought a declaratory judgment that those funds were property of the estate and must be turned over to Edutec. Id. It also included counts for turnover of property under section 542, violation of stay, and avoidance of preferential transfers under sections 547, 548, and 550. Id.

On October 6, 2021, Edutec amended the complaint after allegedly being informed by Atue that the garnished funds were not in its possession but were instead being held in local court. (Adv. Dkt. No. 17 at p. 2.) The amended complaint added as defendants A. Cordero Badillo, Inc., the managing partner of Atue; Atilano Cordero Badillo, the sole shareholder and president of the board of directors of A. Cordero Badillo, Inc. (the "Cordero Badillo defendants.") (Adv. Dkt. No. 17.) It also included as defendants the marshal for the Marshal's Office of the Court of First Instance, who is not identified by name; Hon. Domingo Emanuelli,

---

[1]/Unless otherwise indicated, all references to "Bankruptcy Code" or to specific statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101-1532. All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure, and all references to "Rule" are to the Federal Rules of Civil Procedure. All references to "Local Bankruptcy Rule" are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Puerto Rico. And all references to "Local Civil Rule" are to the Local Rules of Civil Practice of the United States District Court for the District of Puerto Rico.

the Secretary of Justice for the Commonwealth of Puerto Rico; and Hon. Sigfrido Steidel

Figueroa, the head of the Puerto Rico Court's Administration Office (together, the "Puerto

Rico court defendants.") Id. The amended complaint also added a count for turnover of

property held by a custodian under section 543. (Adv. Dkt. No. 17 at ¶¶ 86-90.)

On November 5, 2021, Edutec filed a motion for preliminary injunction for turnover

of property under section 543, which was opposed by Atue and the Cordero Badillo

defendants.[2] (Adv. Dkt. Nos. 42, 54 & 60.) Following a hearing, the court entered an opinion

an order on November 18, 2021 denying Edutec's motion without prejudice. (Adv. Dkt. No.

70.) The court also entered an order on November 16 ,2021, with the consent of the parties,

directing the local court to transfer the garnished funds to the registry account of the

bankruptcy court. (Adv. Dkt. No. 64.) The transfer order included the following provision:

"[t]he transfer of the [g]arnished [f]unds to the [b]ankruptcy [c]ourt does not change or alter

the legal status of the [g]arnished [f]unds or the ownership interest of the [g]arnished

[f]unds by any of the parties to this adversary proceeding, if any." Id.

On November 23, 2021, Edutec moved for reconsideration of the court's opinion and

order denying its motion for preliminary injunction. (Adv. Dkt. No. 79.) Atue opposed, and

the matter was set for a hearing on December 1, 2021. (Adv. Dkt. Nos. 81 & 88.) At the

hearing, Edutec indicated that it would be filing another injunction request. The court set a

deadline for the plaintiff to do so, as well as for the defendants to file their opposition, and

set the matter for a hearing on December 13, 2021. (Adv. Dkt. No. 90.) The motion for

reconsideration was deemed moot. Id.

---

[2] A prior motion filed by Edutec for the turnover of property under section 543 was denied by the
bankruptcy court on procedural grounds. (Adv. Dkt. Nos. 39 & 40.)

On November 30, 2021, the Bayamon court ordered the issuance of a check from its registry account to the Clerk of the bankruptcy court, in compliance with the bankruptcy court's November 16th transfer order. (Adv. Dkt. No. 87.) The check from the Bayamon court was received by the Clerk's office on December 21, 2021, and was deposited into the court registry account.

On December 2, 2021, Edutec filed its second motion for preliminary injunction. (Adv. Dkt. No. 93.) On December 10, 2021, the defendants filed their opposition. (Adv. Dkt. No. 99.) Both parties filed prehearing reports, and Edutec submitted a list of its witnesses and proposed exhibits. (Adv. Dkt. Nos. 97, 98 & 100.)

The hearing was held on December 13, 2021. At the beginning of the hearing, the court informed the parties that it was "advanc[ing] the trial on the merits and consolidat[ing] it with the hearing" as to all counts of the amended complaint other than the violation of stay and fraudulent transfer counts, pursuant to Rule 65(a)(2) made applicable to this adversary proceeding under Federal Bankruptcy Rule 7065.

After the parties made their opening arguments, the court heard from the attorney for the Puerto Rico Department of Justice representing the Puerto Rico court defendants. She reiterated her clients' position from the prior injunction hearing that the Puerto Rico court defendants would comply with any order entered by the bankruptcy court in this case. As stated above, the Puerto Rico court defendants have already complied with the transfer order by delivering the funds to the bankruptcy court.

Edutec called two witnesses: the debtor's president, Mr Emilio Huyke Velez ("Mr. Huyke"), and the debtor's financial advisor, CPA Jose Diaz Crespo ("CPA Diaz"), both of whom appeared via video conference. Mr. Huyke's unsworn statement under penalty of perjury

was admitted into evidence in lieu of his direct testimony. He was then sworn in for cross-examination and re-direct. The court determined that CPA Diaz qualified as an expert witness in accounting and in the insolvency matters at issue in this case, which require, among other things, the determination of the debtor's financial condition at the time of the filing of the bankruptcy case and at the time of the garnishment, the valuation of debtor's assets and claims against the estate, and the liquidation analysis. The defendants did not call any witnesses or enter into evidence any exhibits. At the conclusion of the hearing, the bankruptcy court took the matter under advisement.

### III. Findings of Fact.

After careful consideration of the testimony of the witnesses, the contents of the documents introduced as evidence, and the record of the bankruptcy case, the court makes the following findings of fact.

On July 21, 2020, the Court of First Instance, Bayamon Superior Court, issued judgment against Edutec in the amount of $470,626.98 in case no.: D CD 2018-0192, Atue Real Estate S.E. v. EDUTEC, Inc., Educational Technical College, Inc. et al. (Adv. Dkt. No. 98-2 at pp. 1-2.) Almost a year later, on or about July 6, 2021, Atue requested the execution of judgment, and the Bayamon court issued a writ for the execution of judgment on July 13, 2021. (Adv. Dkt. No. 98-2 at p. 2; Ex. 2.) Five days prior to the filing of the bankruptcy petition, on August 4, 2021, Atue garnished several bank accounts held by Edutec at Banco Popular de Puerto Rico. (Adv. Dkt. No. 98-2 at p. 2.) That same day, Banco Popular issued checks in favor of the marshal for the First Instance Court of Bayamon. Id. On August 9, 2021, Edutec filed for bankruptcy. (Bankr. Dkt. No. 1.) On August 12, 2021, the garnished funds, totaling $161,262.92, were deposited into the Bayamon court registry account. (Adv.

Dkt. No. 98-2 at p. 3; Ex. 4.)  It is undisputed that the garnished funds have never been in the possession of Atue.

The adversary proceeding of caption was filed on August 18, 2021.  (Adv. Dkt. No. 1.) Edutec amended its complaint on October 6, 2021 to include a count under section 543 and to add the Cordero Badillo and Puerto Rico court defendants.  (Adv. Dkt. No. 17.)  The Puerto Rico court defendants were served summons of the amended complaint on October 12, 2021, and the Cordero Badillo defendants were served summons of the amended complaint on October 13, 2021.  (Adv. Dkt. No. 38.)

Mr. Huyke's Testimony

Mr. Huyke testified that Edutec is a technical college that provides vocational training in nursing, childcare, emergency service technicians, first responders and technical support, at two locations in Puerto Rico.  (Adv. Dkt. No. 98-2 at p. 1.)  Edutec offers degrees at both the graduate and associate level, and Mr. Huyke indicated that the school also helps many students obtain their high school diploma.  Id.

He stated that the garnishment of the $161,262.92 has severely impacted Edutec's ability to continue operations and pay its administrative expenses, including post-petition rent and utilities.  (Adv. Dkt. No. 98-2 at pp. 2-4.) The school has not been able to pay its employees, provide health care coverage, or fund its day-to-day operations, resulting in many employees resigning.  (Adv. Dkt. No. 98-2 at pp. 3-4.) Edutec has also been unable to procure new students due in part to an inability to fund a marketing campaign.  (Adv. Dkt. No. 98-2 at p. 3.)  Mr. Huyke testified that, due to the garnishment, Edutec's financial outlook is "dire," and that the turnover of the funds is needed "immediate[ly]" to continue operations. (Adv. Dkt. No. 98-2 at pp. 3, 5.)  Mr. Huyke estimated that Edutec has incurred between

$120,000 and $130,000 in total debt since the filing of the bankruptcy petition, excluding fees owed to its bankruptcy professionals.

Mr. Huyke testified that the return of the garnished funds would benefit Edutec, its creditors, and the bankruptcy estate by allowing the debtor to "complete the education of current students, pay its post[-]petition obligations to teachers, utilities, its landlords, as well as all other vendors" and "launch its distance teaching program." (Adv. Dkt. No. 98-2 at p. 5.)

When asked on cross examination how Edutec was still operating given his testimony during the November 15, 2021 hearing that Edutec would have to shut down within three to four days if it did not receive the garnished funds, Mr. Hayke pointed to the fact that several employees have continued working for the debtor despite not being paid and having their health insurance canceled, as well as to the fact that the school locations are only operating for limited weekly hours.  The court finds Mr. Huyke's testimony to be credible on all matters.

CPA Diaz's Testimony

The court then heard the testimony of CPA Diaz as to whether Edutec was insolvent during the relevant period and regarding the liquidation analysis.  The court finds CPA Diaz's testimony to be credible.

CPA Diaz testified that Edutec was insolvent both on the date of the filing of the petition and when its accounts were garnished five days prior.  The insolvency analysis prepared by CPA Diaz was admitted into evidence.  (Ex. 10.)  It shows that as of the date of the bankruptcy filing, August 9, 2021, Edutec had $1,425,651.00 in total assets, comprised of $12,300 in cash on hand, $70 in deposits in operating bank accounts, $32,829 in deposits in restricted bank accounts, $1,075,827 in accounts receivable, $39,950 in property and equipment, $26,175 corresponding to the value of a vehicle, and $238,500 in deposits.  Id.

CPA Diaz testified that he based these numbers on the amended schedules, which were filed on December 2, 2021 and reflected the recently audited 2020 financial statement.  (Bankr. Dkt. No. 59.)

The insolvency analysis lists total liabilities in the amount of $2,575,411.38, which CPA Diaz explained included claims listed in either the amended schedules or proofs of claims filed in the claims registry.  (Ex. 10; Bankr. Dkt. No. 57.)  A comparison of assets to liabilities reveals an excess of liabilities in the amount of $1,149,760.38.  Id.  The insolvency analysis also included the debtor's revenues versus operating and administrative expenses for 2018 through 2020 that show operating losses of between $546,860 and $784,248 for those years.  Id.

CPA Diaz testified that his analysis applies equally to the date of the garnishment, August 4, 2021, even if he were to add the garnished funds in the amount of $161,262.92 back to the debtor's assets.  He stated that there were no significant events that occurred during the 5-day period between the date of the garnishment and the filing of the petition that would materially affect his conclusion that the debtor was insolvent, given that Edutec's liabilities exceeded its assets by approximately $1 million.  There is no evidence on the record that contradicts this assertion, and the court notes that CPA Diaz is a certified forensic accountant and therefore qualified to conduct such analysis.

Also entered into evidence was the liquidation analysis prepared by CPA Diaz, in which he calculated the amount unsecured creditors would receive if the debtor were in chapter 7.  (Ex. 11.)  CPA Diaz began by taking the appraised or amended-schedule value of each category of the debtor's assets and applying an estimated liquidation value factor (meaning the estimated percentage he believed could be recovered in administering each

asset) to arrive at the assets' estimated realizable value. From this, he subtracted all applicable liens on the assets to arrive at their liquidation value. CPA Diaz explained that this is the common methodology accountants employ when conducting a liquidation analysis.

Performing this calculation, CPA Diaz estimated the liquidation value for debtor's assets to be $231,341. From this total, he then subtracted chapter 11 and 7 administrative expenses, post-petition unpaid obligations, and priority claims, resulting in net assets available for unsecured claims of -$38,129.07. With total unsecured claims of $2,238,803.11, this left an unsecured claims liquidation ratio of -1.70%, meaning in effect that there would be no distribution to unsecured creditors if the case were in chapter 7.

Of note, the largest asset listed in the liquidation analysis is Edutec's accounts receivable, with an appraisal or amended-schedule value of $1,075,827, to which CPA Diaz applied a 25% estimated liquidation value factor, leading to an estimated realizable value of $268,957. This amount was reduced by a lien corresponding to a Small Business Administration Economic Injury Disaster Loan in the amount of $156,750, leaving a liquidation value for this asset of $112,207. CPA Diaz explained that the 25% estimated liquidation value factor was applied to this asset because the accounts receivable have been due for over 90 days (in fact he testified that the accounts receivable were all due for more than one year), no accounts receivable has been collected since the petition date, and because the accounts were owed by the school's students, most of whom are of limited financial means making collection impractical. The liquidation analysis also includes a footnote as to the accounts receivable stating that "[a]s per the [d]ebtor's 2020 audited

9

financial statements, the reserve for uncollectible accounts represents 52.3% of the accounts receivable trade balance." (Ex. 11.)

When asked what dividend unsecured creditors would receive in a chapter 7 case if the garnishment was avoided, CPA Diaz testified that if he added the $161,262.92 in garnished funds back to the debtor's assets, then the net assets for unsecured claims would increase to $123,133.85. Dividing this amount by the total unsecured claims of $2,238,803.11 yields an approximate 5.5% dividend for unsecured creditors. By comparison, if the transfer were not avoided and Atue were permitted to retain the $161,262.92 in garnished funds as partial payment of its $470,626.98 judgment, this would amount to a 34.27% dividend on its unsecured claim, meaning that Atue would be receiving approximately 28% more than it would be entitled to as an unsecured creditor in a hypothetical chapter 7 case. Bearing in mind the over $2 million in unsecured claims in the case, CPA Diaz testified that the estimated liquidation value would need to increase by approximately $650,000 in order for Atue to receive more in chapter 7 than it would if the garnishment were not avoided.

### IV. Legal Discussion.

When the hearing began, the court informed the parties that it was consolidating under Rule 65 the hearing on Edutec's request for preliminary injunction with the trial of the merits of all counts of the amended complaint other than those for violation of stay and fraudulent transfer. Therefore, the court will move directly to adjudicating Counts 1, 4, 6, 7, and 8 of the amended complaint on the merits rather than through the four-prong framework employed for preliminary injunction requests. The court will begin by

10

addressing the parties' arguments under sections 541, 547, and 550 before moving to sections 542 and 543.

**Sections 541, 547, and 550**

Edutec argues that the garnishment of its funds in favor of Atue constitutes an avoidable transfer, and that all of the requirements of section 547(b) have been met. (Adv. Dkt. No. 93 at pp. 14-18; Adv. Dkt. No. 97 at pp. 12-17.) The defendants counter that once the funds were removed from the debtor's accounts at Banco Popular prior to being turned over to the marshal for the Bayamon court, the funds ceased to be property of the bankruptcy estate and section 547 therefore does not apply to this transfer. (Adv. Dkt. No. 99 at pp. 18-20.) The defendants also assert that even if section 547(b) does apply, the debtor has failed to meet its burden under that standard. (Adv. Dkt. No. 99 at pp. 20-21.) Specifically, the defendants maintain that Edutec has not shown that the debtor was insolvent as of the time of the transfer nor that the transfer enables Atue to retain more than it would receive if the case were in chapter 7 and the transfer not been made.[3] Id.

Section 541

It is well settled that "property of the estate" is broadly defined under section 541(a), and that it includes even "property in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced." United States v. Whiting Pools, 462 U.S. 198, 205, 103 S. Ct. 2309, 2314 (1983). This includes property subject to sections 543 and 547. Id. at 205 n.10.

---

[3] The defendants have also raised several arguments as to the appropriateness of entering a preliminary injunction at this point in this adversary proceeding. (Adv. Dkt. No. 99 at pp. 6-17.) As stated above, since the court consolidated the hearing on the preliminary injunction with the trial on the merits, those arguments are now moot.

The defendants attempt to get around this by arguing that once Banco Popular removed the funds from Edutec's accounts and issued a manager's check to the marshal for the Bayamon court, that those funds were no longer property of the estate and that section 541 therefore "does not come into play." (Adv. Dkt. No. 99 at p. 19.) Put another way, the defendants contend that the transfer here was not from Edutec as judgment debtor to Atue, which--the defendants allow--would be a transfer subject to avoidance under section 547(b), but rather from Edutec to Banco Popular, and then from the bank to the marshal, before finally being deposited in the Bayamon court registry account where it could be withdrawn by Atue if not for the bankruptcy filing.

The defendants cite to no statute or case law supporting their position that this sequence of events somehow removes the garnished funds from being property of the estate under section 541 and Whiting Pools and its progeny. Nor does this procedure strike the bankruptcy court as anything other than the standard approach taken in this jurisdiction for a marshal or other court agent to enforce an involuntary lien, in this case a garnishment, against a judgment debtor. The court thus finds that the garnished funds do constitute estate property under section 541(a).

Section 547 and 550

Section 547 allows the trustee, the debtor in possession in this case, to avoid any transfer of an interest of the debtor in property that is a preference. 11 U.S.C. § 547. There are various requirements that must be met to establish a preference: (1) the transfer was "to or for the benefit of a creditor;" (2) the transfer was made "for or on account of an antecedent debt;" (3) the transfer occurred while the debtor was insolvent; (4) the transfer was made within ninety days before the date of the filing of the bankruptcy petition or between ninety

12

days and one year in the case of an insider; and (5) the transfer has the effect of increasing the amount that the transferee would receive in a chapter 7 case. 11 U.S.C. § 547(b). The trustee carries the burden of proving all five elements of a preferential transfer. 11 U.S.C. § 547(g). Section 550(a) authorizes the trustee to recover property, for the benefit of the estate, to the extent a transfer has been avoided under several chapter 5 provisions including, as applicable here, section 547. 11 U.S.C. § 550(a).

Edutec argues that the garnishment constitutes an avoidable transfer under section 547(b). As an initial matter, the court finds that the garnishment of Edutec's funds is a "transfer" as defined by the Bankruptcy Code. See Rentas v. Banco Bilbao Vizcaya Argentaria P.R. (In re Velazquez), 397 B.R. 231, 236 (Bankr. D.P.R. 2008) ("[I]t is settled law that a judicial attachment constitutes a 'transfer' as defined in section 101(54) of the [Bankruptcy] Code."). Turning to the five requirements under the statute, prongs (1), (2), and (4) are all uncontested: the garnishment was made for the benefit of Atue; on account of a judgment entered on July 21, 2020 in Atue's favor against the debtor; and the garnishment took place on August 4, 2021, five days prior to the filing of the bankruptcy petition.

As to the matter of insolvency, the court notes first that for purposes of section 547 the debtor is "presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f). Since the transfer in this case took place five days prior to the bankruptcy filing, this presumption applies in this case.

The Bankruptcy Code defines "insolvent," as applicable here, to mean:

[the] financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—

(i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and

13

(ii) property that may be exempted from property of the estate under section
522 of this title[.]

11 U.S.C. § 101(32).

Insolvency for a debtor is typically determined by a "rough 'balance sheet' test[;] . . . the debtor is insolvent when its liabilities exceed the fair value of its nonexempt assets." 5 Richard Levin & Henry J. Sommer, eds., Collier on Bankruptcy ¶ 547.03 (16th ed. 2021).

Here, CPA Diaz testified convincingly that Edutec was insolvent on the date of the petition and the date of the garnishment, with liabilities exceeding assets by approximately $1 million. While true that the insolvency analysis prepared by CPA Diaz was done as of the petition date, not the date of the transfer, he testified at the hearing that his conclusion still applied to the date of the transfer, which was only five days prior, even after adding the garnished funds back into the debtor's assets. (Ex. 10.) CPA Diaz testified that there were no events that significantly affected the debtor's finances during that short period, and the court accepts the expert's conclusion. In so doing, the court notes that the defendants have not presented any evidence to rebut the presumption of insolvency. See In re Tuggle Pontiac-Buick-GMC, Inc., 31 B.R. 49, 52 (Bankr. E.D. Tenn. 1983) ("proof of insolvency at a reasonable time subsequent to the date of the alleged preferential payment, accompanied by proof that no substantial change in the debtor's financial condition occurred during the interval, is evidence of insolvency on the earlier date, under the usual presumption that a condition known to exist is presumed to have existed for a reasonable period of time prior thereto.") (citing 3 Collier on Bankruptcy, ¶ 60.31 (14th Ed. 1975)). And, the court also takes into consideration that CPA Diaz is a certified forensic accountant who is qualified to undertake such an analysis. The court thus finds that Edutec met its burden as to the insolvency requirement.

Regarding the fifth prong, that the transfer enabled Atue to receive more than it would if the case were in chapter 7 and the transfer had not been made, the court finds that Edutec met its burden as well.  Per amended schedule E/F, Atue has an unsecured, unliquidated claim in the amount of $470,626.98.  (Bankr. Dkt. No. 57.)  Atue has not filed a proof of claim in the claims registry.  Given that the garnished funds total $161,262.92, Atue would then be receiving approximately 34% of its total claim if it were permitted to keep the garnished funds.  By contrast, CPA Diaz testified at the hearing that, once he added the garnished funds back to debtor's assets in its liquidation analysis, unsecured creditors would receive an approximate 5.5% dividend.  (Ex. 11.)  While the defendants took issue with the valuation of certain assets, particularly with regard to Edutec's accounts receivable (see Adv. Dkt. No. 99 at pp. 20-21), the court accepts CPA Diaz's analysis and conclusion that Atue would receive significantly more if it kept the garnished funds than it would if the garnishment were avoided and the case were in chapter 7.  In making this finding, the court bears in mind that, given the $2,238,803.11 in unsecured claims in this case, the estimated liquidation value would have to increase from $231,341.00 by about $650,000 to approximately $881,341 before the conclusion would change.  The court thus finds that Edutec made the requisite showing as to this prong.

In view of the above, the court concludes that the garnished funds are property of the estate under section 541(a), that the garnishment may be avoided as a preferential transfer under section 547(b), and that the garnished funds may be recovered by the trustee, in this case the debtor in possession, for the benefit of the estate under section 550(a).

**Sections 542 and 543**

The court next turns to Edutec's request for the turnover of the garnished funds under section 542 or 543, which correspond to Counts 7 and 8 of the amended complaint, respectively. At the outset, the parties agree that most, if not all, of the requests for relief under these sections were rendered somewhat moot by the transfer of the garnished funds from the Bayamon court registry to the bankruptcy court. However, because our transfer order specifically provided that the transfer of the funds "does not change or alter the legal status of the [g]arnished [f]unds or the ownership interest of the [g]arnished [f]unds by any of the parties to this adversary proceeding, if any," the court will analyze the relief sought under both sections. (Adv. Dkt. No. 64.)

In its November 18, 2021 opinion and order, the court denied Edutec's request for turnover of funds under section 543, concluding that "it was not clear that the marshal for the First Instance Court of Bayamon qualified as a 'custodian' under section 101(11)(C) of the Bankruptcy Code." (Adv. Dkt. No. 70 at p. 8.) The court also stated that it was unclear from the record that a final judgment had been entered in the local court case. Edutec has since addressed these concerns.

As to the latter concern, the parties are not disputing that final judgment was entered in the local court, and the court is satisfied that such is the case. (See Ex. 2.)

Regarding the former, Section 543(b) provides that "[a] custodian shall . . . deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case." 11 U.S.C. § 543(b)(1).

16

> The term "custodian" is defined, in turn, under the Bankruptcy Code as:
>
> (A) receiver or trustee of any of the property of the debtor, appointed
> in a case or proceeding not under this title;
> (B) assignee under a general assignment for the benefit of the debtor's
> creditors; or
> (C) trustee, receiver, or agent under applicable law, or under a contract, that
> is appointed or authorized to take charge of property of the debtor for the
> purpose of enforcing a lien against such property, or for the purpose of general
> administration of such property for the benefit of the debtor's creditors.

11 U.S.C. § 101(11).

As discussed in more detail in the court's prior opinion and order, the applicable provision here is section 101(11)(C), and the stumbling block at the last hearing was that there was no "evidence on the record establishing that there was a lien on Edutec's bank accounts." (Adv. Dkt. No. 70 at p. 8.)  All other requirements under section 543 are present here and not contested, including that the marshal is an agent authorized under Puerto Rico law by the Bayamon Court of First Instance to take possession of the garnished funds in order to execute the judgment in favor of Atue, and that the marshal had knowledge of the commencement of the bankruptcy case.

In its motion, Edutec cites to First Circuit case law supporting its position that an attachment or garnishment creates a lien in favor of the creditor under Puerto Rico law. (Adv. Dkt. No. 93 at pp. 19-20); see Yumet & Co. v. Delgado, 243 F. 519, 522 (1st Cir. 1917) (an attachment on property creates a lien under the Puerto Rico Code of Civil Procedure). Bearing in mind the expansive definition of lien under the Bankruptcy Code, see 11 U.S.C. § 101(37), the court agrees that the garnishment is a lien and that the marshal for the Bayamon court thus qualifies as a "custodian" for purposes of section 543.

17

The requirements of section 543 have been met.  Thus, the garnished funds were in the possession, custody, or control of a custodian while held by the Puerto Rico court defendants in the Bayamon court.  And, pursuant to our transfer order, the funds maintained that legal status upon the transfer to the bankruptcy court.  (Adv. Dkt. No. 64.)  If the lien created by the garnishment had not been avoided under section 547(b) elsewhere in this opinion and order, the funds would be distributed to Atue.  But, because the garnishment lien was avoided, the bankruptcy court hereby orders the garnished funds to be turned over to the debtor.

If section 543 had not applied, the funds would still be turned over to the debtor under section 542.

## V.    Conclusion.

Based on the foregoing, and there being no just reason for delay, the court enters partial judgment in favor of Edutec as to Counts 1, 4, 6, 7, and 8 of the amended complaint and orders the Clerk of the Bankruptcy Court to disburse to Educational Technical College Inc. the amount of $161,262.92 from the court's Registry Account.  With no further request for relief pending against the Puerto Rico court defendants, the amended complaint is hereby dismissed as to them.  In light of the relief being provided under the other counts of the amended complaint, Count 5 is dismissed as moot.  A separate partial judgment will be entered.

IT IS SO ORDERED.

In Ponce, Puerto Rico, this 22nd day of December 2021.

Edward A. Godoy
U.S. Bankruptcy Judge

18